## F. RIENSCH v. T. S. NAYLON.

### Decided May 15, 1908.

**1.—Pleading—Hearsay Statements—Practice.**

Hearsay statements of third parties when not admissible in evidence should not be read to the jury as allegations in a petition, nor should the jury be permitted to take such pleading with them in their retirement.

**2.—Evidence—Hearsay.**

The testimony of a plaintiff as to what a third party had told him, plaintiff, that the defendant had said to such third party, would be hearsay and incompetent evidence.

**3.—Same—Declaration of Co-conspirator.**

The rule that a statement of·a conspirator is admissible in evidence against a co-conspirator applies only in the case of a cause of action which is based upon an alleged conspiracy. .

Appeal from the District Court of Fayette County. Tried below before Hon. L. W. Moore.

*Brown & Lane,* for appellant.—Where, in a case tried before a jury, there was a sharp conflict in the testimony between the plaintiff on one side and the defendant on the other, and where the jury was compelled to discredit one or the other, and where plaintiff's pleadings contained slanderous vituperations and arguments irrelevant to any issue in this case, and was prejudicial to the character of defendant, the court should strike out and suppress such matters upon demurrer, and it was error not to have done so. And the court further erred in this case, after his refusal to strike out and suppress this objectionable and improper matter, by permitting plaintiff's counsel, over the objection of defendant, to read to the jury trying said cause that portion of plaintiff's petition demurred to, and in permitting said counsel, over the objection of defendant, to introduce evidence in relation to said matter, and to ask the witnesses questions relative thereto, and it was error to permit the jury to take the amended petition of plaintiff, which contained the matter demurred to, with it when it retired to consider of its verdict, because all such actions and deeds were calculated to, and did, inflame and prejudice the minds of the jury against the defendant, and did influence it in finding a verdict against defendant. Rule 2 for District Courts, 47 Texas, 615 and 616; Simpson v. Thompson, 43 Texas Civ. App., 273; Ft. Worth & D. C. Ry. Co. v. Lindsey, 11 Texas Civ. App., 244; Mims v. Mitchell, 1 Texas, 448.

*John T. Duncan,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee against appellant to recover the sum of $500 alleged to have been delivered to appellant by appellee by mistake, and the further sums of $300 exemplary damages for the wrongful retention of said money by appellant.

Omitting the formal portions, plaintiff's petition is as follows:

"I.   Plaintiff makes known to the court that on or about the 22d day of September, A. D. 1905, the First National Bank of Giddings, Texas, shipped by express from Giddings to Winchester a package of money, to wit, current money of the United States, containing $500, and said package was directed to be delivered to C. H. Schmidt, who was a merchant doing business at Winchester, Texas.

"II.   Plaintiff makes known to the court that at that time he was agent for the Wells, Fargo & Company Express at Winchester, and that said package of money was received by the Wells, Fargo & Company Express at Giddings, and was brought by it to Winchester, in Fayette County, Texas, and received by this plaintiff as its agent.

"III.   Plaintiff makes known to the court that on the day before— that is to say about the 21st day of September, 1905—the First National Bank of Giddings should have sent a package of money, containing $500, to the defendant, F. Riensch, but by some means or other the money was not shipped on that day, but the way-bill for the same came and was delivered to this plaintiff, as agent, marked "short," and the plaintiff represents that on the next day, to wit, the 22d day of September, or about that date, the package of $500 that should have been received the day before for the defendant Riensch was shipped to this plaintiff, along with a package of money that was sent by express to C. H. Schmidt, and this plaintiff said that he did not scrutinize the way-bill closely, and did not notice that one of the packages had been shipped to the said Schmidt, but believed that they were both shipped to and were intended for the defendant, F. Riensch, and plaintiff, so believing, delivered both packages, to wit, the sum of $1,000, to the said F. Riensch, wherein he ought not to have delivered to him but one package, to wit, $500.

"IV.   Plaintiff says that the defendant Riensch, well knowing that a mistake had been made, and that he had received more money than he was entitled to, concealed his knowledge of this fact for several months, but plaintiff says that when he delivered said two packages to the defendant he took defendant's receipt for the same, or had him to receipt the delivery book, to show that he had delivered the same to the defendant.

"V.   Plaintiff says that the said C. H. Schmidt never discovered that a package of money had been sent to him by the First National Bank of Giddings until about the 12th day of January, 1906; that about that time he received a statement from the bank at Giddings showing that he was charged with $500 more money than he had received from the bank.

"VI.   The plaintiff says that by accident, on or about the 12th day of January, 1906, one F. E. Lowke, a brother-in-law of the defendant, informed the said Schmidt in confidence, and rather secretly, that the defendant, F. Riensch, had received from the bank at Giddings $500 more than he was entitled to, or $500 more than he had been charged with upon the books of the said bank at Giddings, and plaintiff charges that said money so received by the defendant was the money that was shipped by said bank to said C. H. Schmidt.

"VII.   Plaintiff says that he has settled with the said C. H. Schmidt,

for the reason that he felt that the mistake was his, and that he was responsible to the said C. H. Schmidt for the said money, and said Schmidt has assigned to plaintiff all his interest in said matter, and that plaintiff is now the owner of said claim, which the said Schmidt formerly had aganst this defendant, and all the damages he is entitled to recover of and from the defendant, F. Riensch, growing out of the same.

"VIII.  This plaintiff makes known to the court that the said defendant and Lowke are brothers-in-law. That, after the said defendant got possession of the said money belonging to the said Schmidt in the manner as hereinbefore alleged, that said defendant and his brother-in-law, the said Lowke, entered into a conspiracy for the purpose of cheating, defrauding and preventing the said C. H. Schmidt or this plaintiff from recovering back money from the said defendant. That the said defendant and the said Lowke, having full knowledge that the defendant has received of the Express Company the money that belonged to C. H. Schmidt, entered into a conspiracy, and that said conspiracy is still continuing for the purpose of suppressing the truth and suppressing all legal and legitimate evidence of said fact. That the said Lowke, in an unguarded moment, informed said Schmidt that the defendant, Riensch, had his (Schmidt's) money, but afterwards the said Riensch and the said Lowke conspired together to deny this fact, and to profess no knowledge of the same, and to profess that said statement made by the said Lowke to the said Schmidt was said to him in jest or in fun, when in fact it was the truth spoken, and said Lowke and said Riensch have since conspired, and are now conspiring, to suppress the truth, and to intimidate witnesses from testifying to said fact, and that said conspiracy has continued since the said Riensch became possessed of said money until this good hour.

"IX.  Plaintiff says that, in company with C. H. Schmidt, he went to the defendant, after the said Lowke had informed said Schmidt that the defendant was $500 ahead with the Giddings bank, and demanded of the defendant the restitution of said money.

"X.  Plaintiff says that all they could get out of said defendant was that it was "mighty funny," and that he would examine his books and see if he got it, and would write to the Giddings bank about it, but that he has not examined his books and that he has not written to the bank, and he still fails and refuses to surrender to this plaintiff said money so received by him through mistake.

"XI.  Plaintiff says that the defendant, well knowing that he has been guilty of the suppression of evidence showing that he received said money through mistake, and well knowing that the mistake had been discovered, yet willfully, maliciously, persistently and oppressively withholds said money from this plaintiff, to the damage of plaintiff in the sum of $500 actual damages, and the further sum of $200 punitory damages. That the defendant has caused this plaintiff to employ an attorney to file suit to recover this money for him, and by so doing he has compelled this plaintiff to incur the additional cost of an attorney's fee in this case, which the plaintiff alleges amounts to the reasonable sum of $100, and that plaintiff is entitled to recover the same from the defendant as a part of his punitory and vindictive damages.

"Wherefore, premises considered, plaintiff prays that, inasmuch as the

defendant has been served and has answered herein, he have judgment against the defendant in the sum of $500, with six percent interest from the 22d day of September, 1905, until judgment is rendered herein, and that he be permitted to recover the further sum of $300 for punitory damages, and for all costs of suit in this behalf expended, together with general relief, and for all of which he will ever pray."

The defendant answered by general and special exception and general denial, and also specially denied the allegations of the petition charging that any money had been delivered to him by plaintiff except the $500 which had been expressed to him by the Giddings bank, and averred that said allegations were known to be false by plaintiff, and were fraudulently made by plaintiff for the purpose of extorting money from defendant and covering up defalcation of plaintiff.

The trial in the court below resulted in a verdict and judgment in favor of plaintiff in the sum of $500, with interest at six percent from September 22, 1905.

The sixth and eighth paragraphs of the petition above set out were specially excepted to by the defendant on the ground that the allegations therein were "impertinent and immaterial, and is an effort to plead plaintiff's anticipated evidence, and because the same does not present, nor tend to present, any deeds or acts of the defendant which would create a liability on his part to plaintiff, and same is not admissible in law."

These exceptions were overruled by the court, and, over defendant's objection and exception, the plaintiff's counsel was allowed to read the paragraphs of the petition above mentioned to the jury, and the jury allowed to take with them in their retirement the petition containing said allegations. The bill of exceptions taken by the defendant, which is approved by the trial judge, shows that after the exceptions had been overruled and the entire petition had been read to the jury, the court ordered the jury withdrawn, and then, in the absence of the jury, informed plaintiff's counsel that he had erred in overruling the exceptions. The jury were not instructed not to consider said allegations, and the defendant's request that the jury should not be permitted to take the petition containing these allegations with them in their retirement was denied.

Under appropriate assignments of error the appellant complains of the action of the court in not sustaining his exceptions to these allegations of the petition, and in permitting same to be read to the jury and to be taken with them in their retirement.

We think it clear that the allegations were improper, and the exceptions thereto should have been sustained. Plaintiff's right of recovery depended on whether the money intended for Schmidt had been received by appellant, and upon this issue any testimony on the part of any witness as to what a third party had claimed to know about the matter would be hearsay, and therefore plaintiff could not, over defendant's objection, have introduced testimony of the statements alleged in the petition to have been made by Lowke to Schmidt. The facts alleged not being such as could be properly introduced in evidence, their presence in the petition was unwarranted, and the court should have ordered them expunged therefrom, and not permitted them to be thus placed before the jury. If allowed to remain in the petition, they should not have been

read to the jury, and the jury should have been instructed not to consider them. Simpson v. Thompson, 43 Texas Civ. App., 273.

It further appears from the record that "while the plaintiff, T. S. Naylon, was on the stand testifying in his own behalf, he was asked by his counsel to state what he told Riensch that Schmidt had told him, Naylon, that Lowke had said about the defendant, Riensch, having his money, to which question and the testimony it elicited defendant objected, but the court overruled said objection and permitted the witness to state: "I said we can prove that you got the money by my books, and we can prove it by what Lowke told Schmidt."

This evidence should not have been admitted. The hearsay statement of plaintiff as to what Lowke had told him appellant had admitted to him, Lowke, in regard to receiving the money, was clearly not admissible, and the evident purpose and effect of this question and answer was to get this statement of Lowke to Schmidt before the jury.

The evidence was sharply conflicting upon the main issue in the case, and we cannot say that the admission of this incompetent evidence, in connection with the improper allegations in the petition, which were permitted to be read to the jury and taken with them in their retirement, was harmless error.

There is no merit in appellee's contentions, under appropriate cross-assignments, that the pleadings and evidence above discussed were unobjectionable because the pleadings charge a conspiracy between appellant and Lowke to suppress the truth, and that under such allegations the statements of either of the alleged conspirators is admissible in evidence against his co-conspirator. The petition does not allege, or attempt to allege, a cause of action growing out of a conspiracy between appellant and Lowke, and the charge of such conspiracy seems to have been injected into the petition for the sole purpose of getting before the jury the hearsay statement of Schmidt before mentioned.

For the reasons indicated the judgment of the court below must be reversed and the cause remanded, and it has been so ordered.

*Reversed and remanded.*